Elizabeth ARCHER, Noland Schneider, Patricia Schneider, Joel Burns, Peggy Burns, Audrey Whipple, John R. Whipple and O. Webster Adams, Jr., Appellants,

v.

UNITED STATES of America, State of Utah, George N. Larsen, Western States Refining Company, a corporation, Max B. Lewis, T. W. Notestine, Continental Bank & Trust Company, a corporation, Trustee, and The Superior Oil Company, a corporation, Appellees.

No. 6014.

United States Court of Appeals Tenth Circuit.

June 10, 1959.

Gordon I. Hyde, Salt Lake City, Utah, for appellants.

Claron C. Spencer, Atty., Dept. of Justice (Perry W. Morton, Asst. Atty. Gen., A. Pratt Kesler, U. S. Atty., C. Nelson Day, Asst. U. S. Atty., Salt Lake City, Utah, and Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., were with him on the brief), for appellee United States.

No appearance for appellees State of Utah, George N. Larsen, Western States Refining Co., Max B. Lewis, T. W. Notestine, Continental Bank & Trust Co., Trustee, and The Superior Oil Co.

Before MURRAH, LEWIS, and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The question is whether the appellants, who claim ownership of an unpatented mining claim [1] located on land involved

---

[1] The appellants do not claim ownership of a patented claim and it is apparent from the record that no patent has ever been issued for the claim.

in a quiet title suit brought by the United States, may intervene in that action.

The land was part of a school land grant to Utah. Upon survey it was found to be within a reservation set apart for the Navajo Tribe of Indians. When, prior to survey, granted land was included within an Indian reservation, the state was permitted to select other land in lieu thereof.[2] Utah by statute provided that mineral deposits on state lands were reserved from disposition except on a rental or royalty basis,[3] and asserts that the waiver of the state's claim to granted school land upon the selection of lieu land did not convey the minerals therein to the United States.

The Navajo Tribe, with the approval of the United States, gave an oil and gas lease covering the pertinent area and other land to The Superior Oil Company. Utah gave a similar lease in which appellees Larsen, Western States Refining Company, Lewis, Notestine, and Continental Bank & Trust Company claim an interest.

The United States seeks to quiet its title, subject to the Superior lease, against Utah and the named defendants claiming under the Utah lease. Appellants, asserting their ownership of the unpatented mining claim, moved to intervene and with their motion submitted an answer in which they denied that the United States had fee simple title to the land included within the mining claim and prayed for a decree adverse to the Navajo Tribe and its lessee, Superior. In a proposed cross-claim the appellants asserted the validity of their title as against the defendants and prayed for a decree quieting their title. The motion for leave to intervene was denied.

The United States, like any other owner of property, may have its property rights adjudicated by a court of competent jurisdiction.[4] Here the United States seeks to quiet its title as against the claims of the named defendants. It seeks no relief against the appellants. Whatever right they have to intervene must be exercised under Rule 24, F.R.Civ.P., 28 U.S.C.A., which permits intervention as a matter of right when representation of the applicant's interest is inadequate and the applicant may be bound by the judgment in the action. Each requirement is absent.

The defeat of the claim of Utah and those claiming under Utah is essential to both the United States and the appellants. The interest of the United States is far greater than that of the appellants as it concerns substantially more land. This is not a case like United States v. Martin, 10 Cir., 267 F.2d 764, in which intervention was allowed over the objection of the United States. There the United States alleged in its complaint that the basic document was contractual in nature. The interveners asserted rights based on that document. The court held that vested rights of the interveners, even without the contract, could not be taken without just compensation and that the intervention presented "a claim upon which relief can be granted as one arising out of a constitutionally implied contract within the meaning of the Tucker Act."

In the Martin case there was a direct conflict of interest between the interveners and the United States and there was no representation of the interveners in the main case. Here the United States is vigorously contesting the claim of Utah. In this regard it is representing the interests of the appellants and we shall not assume that such representation will be inadequate.[5]

While the United States in its complaint avers the validity of the Superior lease, it does so to protect the title of its lessee against the claims of Utah and

---

2. 43 U.S.C.A. §§ 851–853.

3. 1953 U.C.A. § 65–1–15.

4. Rex Trailer Co. v. United States, 350 U.S. 148, 151, 76 S.Ct. 219, 100 L.Ed. 149.

5. Cf. MacDonald v. United States, 9 Cir., 119 F.2d 821, 827, mod. sub nom. Great Northern Ry. v. United States, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836.

its lessee. In so doing it does not seek any determination as to the relative rights of Superior and the appellants because it did not make appellants parties to the suit. Both Superior and the appellants assert rights derived from the United States. The establishment of the basic title of the United States benefits both Superior and the appellants. The suggestion that the inclusion of Superior as a party is to prefer Superior over appellants can only amount to a charge that the government is acting in bad faith. We reject any such insinuation. The good faith efforts of the United States to maintain its title as against Utah and those claiming under Utah assures adequate representation for the appellants in litigation to defeat the Utah claims.

The appellants will not be bound by any decree which may be entered herein in the sense that it will be res judicata. This is not an action in rem as the proceedings do not purport to affect the interests of all persons in the property.[6] A proceeding to affect only the interests of particular persons is a proceeding quasi in rem.[7] As the appellants are not parties, their rights cannot be determined by any decree entered herein.[8]

Because the appellants derive whatever rights they may have from the United States, a decree in favor of Utah and its successors will have a binding adverse effect unless the appellants by reason of their situation can establish a right created prior to the grant under which Utah claims. The existence of such a right may not be determined in this action to which appellants are not parties. For example, if the mining claim was in existence prior to the Utah grant and was excluded therefrom and remained subject to the mining laws of the United States, the rights of the appellants to that mining claim may not be determined herein.

If the United States prevails, then the appellants have those rights to which they are entitled under the mining laws. This action will not determine whether Superior, the Navajo oil and gas lessee, or the appellants have the better title. No decree in favor of the United States may determine the conflicting claims of Superior and the appellants.

While the appellants do not rely on permissive intervention under Rule 24(b), we note in passing that such rule is not helpful to them as intervention thereunder is discretionary and in the exercise of that discretion the court is required to consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." It is clear that in this case there would be such delay and prejudice.

The appellants have not satisfied the requirements of Rule 24. This makes it unnecessary to consider the other points raised in the briefs.

Affirmed.

6. Restatement, Judgments, § 32, comment a.

7. Restatement, ibid. Cf. Albion-Idaho Land Co. v. Naf Irr. Co., 10 Cir., 97 F.2d 439, 444.

8. United States v. State of Oregon, 295 U.S. 1, 12, 55 S.Ct. 610, 79 L.Ed. 1267.