Ramona SHUMP et al.,
Plaintiffs-Appellees,

v.

Lana BALKA et al.,
Defendants-Appellees,

and

Wanda Jones et al., Intervenors-Objectors Appellants.

No. 76–2048.

United States Court of Appeals,
Tenth Circuit.

Submitted on the Briefs March 15, 1978.

Decided May 12, 1978.

Roger L. McCollister, Legal Aid Society of Topeka, Inc., Topeka, Kan., for plaintiffs-appellees Shump, et al.

Richard E. Jones, Asst. City Atty., Topeka, Kan., for defendants-appellees Balka, et al.

Fred W. Phelps, Topeka, Kan. (Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., of counsel), for intervenors-objectors appellants Jones, et al.

E. Edward Johnson, U. S. Atty., and Richard L. Meyer, Asst. U. S. Atty., Topeka, Kan., for appellee Secretary of Housing and Urban Development.

Before HOLLOWAY, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Intervenors-objectors (Appellants) seek review of the district court's denial of their motion to intervene.

Ramona Shump, *et al.,* (Plaintiffs) petitioned the district court on June 6, 1975 for an order declaring the maintenance fees collected by the Topeka Housing Authority (THA), from September 1, 1971 to August 1, 1974, to be in violation of 42 U.S.C.A. §§ 1402 and 1437, under which rental payments of public housing tenants may not exceed 25% of a family's adjusted income. Plaintiffs sought a class action certification and an order directing repayment of the maintenance fees. An identical action was filed in state court. Both actions were captioned *Shump v. Balka.*

On June 24, 1975 Appellants filed a civil rights action, captioned *Rogers v. Barnes,* alleging that the collection of the maintenance fees was in violation of 42 U.S.C.A. §§ 1983 and 1985(3). Appellants sought repayment of the fees and actual and punitive damages.

On July 15, 1975 Plaintiffs' state court action was removed to the federal district court. Thereafter, on May 4, 1976, Plaintiffs' two actions were consolidated. On May 24, 1976, Appellants' motion to consolidate their action, *Rogers v. Barnes,* with Plaintiffs' consolidated actions was denied.

On June 7, 1976, Plaintiffs' consolidated actions were certified as class actions. On the same date, and within the order certifying Plaintiffs' action as a class action, the district court commented as follows on its refusal to consolidate Appellants' action with those of Plaintiffs:

At a joint hearing regarding the two *Shump v. Balka* actions and the *Rogers v. Barnes* action, the court granted the motion to consolidate the two *Shump* cases but denied the motion to consolidate all three actions primarily because the *Rogers v. Barnes* action was being maintained against the officers of THA in their individual capacities and sought, in addition to a return of the maintenance fees, punitive damages and attorneys' fees.

[R., Vol. I, p. 37.]

On July 22, 1976, a settlement agreement was reached in Plaintiffs' consolidated actions. The basic settlement conditions/covenants provided, *inter alia:* all maintenance fees were to be refunded; refunded maintenance fees were to be reduced by delinquent rentals due together with costs

of repairs for damages caused by class members; immediate and direct payments were to be made to all class members then residing in THA without requiring them to submit a written or oral claim; non-residents of THA entitled to a refund were to receive a refund after submitting a written application therefor; failure of a non-resident to file for a refund within 90 days was to constitute a waiver of the right to refund; and that actual and constructive notice of the settlement was to be published.

On August 27, 1976, Appellants filed their "Motion to Intervene and Notice of Intention to be Represented by Separate Counsel," wherein they alleged that they were not satisfied with counsel representing the class in that (a) full recovery was not being sought, and (b) the proposed settlement imposed "an undue burden on the class, discriminates between resident and non-resident tenants, is fraught with collusion between Shump-McCollister [1] and the Defendants, denies the class due process in the matter of setoffs and counterclaims, and is inadequate compensation and recovery for the class as a matter of fact and law."

On September 9, 1976, Appellants filed a supplemental motion to intervene alleging, *inter alia*: inadequate representation by Plaintiffs' counsel; inadequate allegations of damages and losses sustained; the proposed settlement was fraught with collusion; and that the recovery should not only include the refund of the maintenance fees but also interest and damages. Thereafter, both Plaintiffs and Defendants filed detailed memoranda supportive of the settlement and in opposition to Appellants' intervention.

On September 3, 29, and 30 and October 8, 1976, the court heard detailed and extensive testimony on Appellants' motion to intervene and on the settlement issue. On October 8, 1976, at the conclusion of the hearing, the district court made "some general statements about the case," including: intervention would delay or prejudice the rights of the original parties; intervention could delay a settlement many months;

permissive intervention is not warranted; the settlement should proceed when, as here, the United States Government is furnishing the money to refund the maintenance fees, even though there is a possibility it is not obligated to do so; THA does not have the necessary funds to repay the fees and "has no way at this time to secure such funds"; the intervenors are a small number of the class who wish to litigate, whereas a much larger number of the class wish to proceed with the settlement and to receive refunds immediately; there is no evidence of collusion between the parties; denial of intervention keeps separate the *Shump v. Balka* action for the return of the maintenance fees and the *Rogers v. Barnes* action wherein the Plaintiffs seek additional relief, including punitive damages; if any class member is aggrieved by the setoff for rent due or damages to the unit the setoff can be reviewed by a grievance committee and by the court; there is no evidence whatsoever of "fraud or collusion in regard to the proposed settlement or in regard to any other aspect of the case"; the "settlement agreement itself is fair, just, and equitable"; the settlement will be confirmed as drafted if the parties agree it can be modified by (1) disallowing setoffs for tenant obligations which arose prior to September 1, 1971 and, (2) requiring all tenants to file a claim for a refund; the notices of the settlement given by mail and publication are reasonable and in accord with due process; and that the parties make a diligent and continuing effort to locate all those prior tenants of THA entitled to a refund but who have left without leaving forwarding addresses. Thereafter, on October 13, 1976, the court incorporated these findings in a brief order denying Appellants' motion to intervene and approving the settlement as modified.

On appeal, Appellants contend that the trial court erred in: (1) finding it had subject matter jurisdiction necessary to approve that portion of the settlement which provided for the allowance of setoffs; (2) finding that the setoff could be allowed

---

1. McCollister was the attorney for the class.

## 1344

against non-participating class members; (3) approving the settlement without making adequate provision for judicial supervision and review of the claimed setoffs; (4) finding that notice to the class as originally given was adequate to satisfy requirements of due process; (5) denying their motion to intervene; (6) refusing to consolidate *Shump v. Balka* and *Rogers v. Barnes*; and (7) requiring the individual members of the class to file claims with the Clerk of Court in order to participate in the recovery. Because of their dispositive nature, we will first consider issues (6) and (5).

## I.

■ Appellants contend that the court erred and abused its discretion in denying their motion for consolidation. They argue that consolidation was proper under Fed. Rules Civ.Proc. rule 42(a), 28 U.S.C.A. which provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the action, it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Plaintiffs argue that the court properly denied consolidation because their action was solely for a refund of the fees, whereas Appellants sought a refund of the fees, together with actual and punitive damages, and attorneys' fees. Plaintiffs also argue that Appellants have failed to meet their burden to establish that consolidation would promote trial convenience and economy in administration or that they have suffered any injury as a result of the trial court's refusal to consolidate. We agree. We hold that the trial court's refusal to consolidate the *Shump v. Balka* actions with the *Rogers v. Barnes* action was proper in all respects.

■ In *American Employer's Insurance Company v. King Resources Co.,* 545 F.2d 1265 (10th Cir. 1976), we set forth the general rule relating to consolidations which we reiterate here:

> The court's denial of the motion to consolidate finds further support in the rule that such a determination is discretionary and will not be reversed on appeal absent clear error or exigent circumstances, neither of which is present here. 545 F.2d, at p. 1269.

We will not hold that the court erred in refusing to consolidate Appellants' action with Plaintiffs' actions, when, as here, the relief sought varied substantially, the named Defendants were being sued in different capacities, and Appellants have completely failed to establish that which would be gained by consolidation or that they would suffer injury by failure to consolidate.

## II.

Appellants contend that the trial court erred in denying their motion to intervene. They argue that their right to intervene was provided under Fed.Rules Civ.Proc., rule 24(a)(2):

> Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties.

Appellants argue that the Advisory Committee on Rules recognized that class actions and intervention often go hand in hand and that the present action is within the Committee's comments:

> A class member who claims that his representation does not adequately represent him, and is able to establish that proposition with sufficient probability, should not be put to the risk of having a judgment entered in the action which, by its terms, extends to him, and be obligated to test the validity of the judgment as applied to his interest by a later collateral

attack. Rather, he should as a general rule, be entitled to intervene the action, 28 USCA Rules 24 to 33, p. 17 reported at 39 F.R.D. 109, 110.

In *Bumgarner v. Ute Indian Tribe of the Uintah and Ouray Reservation,* 417 F.2d 1305 (10th Cir. 1969), we discussed intervention as a matter of right:

Appellants first contend that they are entitled as a matter of right to intervene pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, as amended in 1966. Further they contend that if they are not entitled to intervene as a matter of right, at least the trial court abused his discretion in not permitting them to intervene pursuant to Rule 24(b)(2).

We hold that the appellants have not shown they were entitled to intervene as a matter of right, nor did the trial court abuse its discretion as to permissive intervention.

As to intervention as a matter of right, Rule 24(a) provides that appellants here are not entitled to so intervene if their interest is adequately represented by existing parties. The issue has been considered by the courts on several occasions since the provisions of the Rule were restated in 1966. See *Nuesse v. Camp,* 128 U.S.App.D.C. 172, 385 F.2d 694 (1967); *Edmondson v. State of Nebraska,* 383 F.2d 123 (8th Cir. 1967); *Kheel v. American Steamship Owners Mutual Protection & Indemnity Ass'n,* 45 F.R.D. 281 (S.D.N.Y.1968); *Hobson v. Hansen,* 44 F.R.D. 18 (D.C.1968). See also Moore, Federal Practice ¶ 24.08[2].

Collusion between the party purporting to represent the position of others and those on the other side of the suit will necessarily destroy the adequacy of representation as contemplated by the Rule. *Klein v. Nu-Way Shoe Co.,* 136 F.2d 986 (2d Cir.); *Twentieth Century-Fox Film Corp. v. Jenkins,* D.C.N.Y., 7 F.R.D. 197; *Farmland Irrigation Co. v. Dopplmaier,* 220 F.2d 247 (9th Cir.). As stated in *Stadin v. Union Electric Co.,* 309 F.2d 912 (8th Cir. 1962):

" * * * Two leading commentators on federal practice have said that inadequacy of representation is or may be shown by proof of collusion between the representative and an opposing party, by the representative having or representing an interest adverse to the intervenor, or by the failure of the representative in the fulfillment of his duty. 4 Moore's Federal Practice § 24.08, pp. 38–39; 2 Barron & Holtzoff, Federal Practice and Procedure (Wright Revision), § 597, pp. 381–82. * * * "

* * * * * *

As to appellants' alternative contention that the trial court abused its discretion in denying them leave to intervene, it should be observed that permissive intervention under Rule 24(b) is clearly discretionary with the trial court. The ruling of the trial court will not be reversed unless there is a showing of clear abuse of this discretion. See *Degge v. City of Boulder, Colorado,* 336 F.2d 220 (10th Cir. 1964); *Goodpaster v. Oklahoma Gas & Electric Co.,* 291 F.2d 276 (10th Cir. 1961); *Edmondson v. State of Nebraska, supra; Stadin v. Union Electric Co., supra.*

417 F.2d, at 1308–1309.

Applying these standards, we hold that the trial court did not err in refusing to grant Appellants' motion to intervene, particularly when, as here, their action was substantially different from that of Plaintiffs and Appellants completely failed to establish with "sufficient probability" inadequate representation. In denying Appellants' motion to intervene following a detailed hearing, the district court noted that: intervention could delay the proceedings many months; the settlement should proceed because the United States was furnishing the money for the maintenance fee refunds; the intervenors represent a small number of the class who desire to litigate rather than settle; there is no evidence whatsoever of fraud or collusion in any respect and the representation afforded the class is adequate. With the exception of the issue of representation, Appellants do not specifically challenge the above findings. Under these circumstances, and because Appellants' action was brought under the Civil Rights Act seeking general and punitive

damages in addition to recovery of the maintenance fees, the trial court's denial of Appellants' motion to intervene did not constitute an abuse of discretion.

### III.

■ Appellants contend that the court erred in finding that it had subject matter jurisdiction necessary to approve that portion of the settlement agreement which provided for the allowance of setoff claims by the Defendants.

Plaintiff class members consisted of past and present tenants of THA who had been assessed maintenance fees. As tenants, the class members were obligated under their leases to pay certain monthly rental fees and maintenance fees. Clause 7 of the lease agreement also provided:

> . . . except for normal wear and tear, tenant agrees to pay reasonable charges for repair of intentional or negligent damages to the leased premises of the project caused by the tenant, his family, dependents and/or guests.

Thus, while the lease agreement dictated the payments of the rentals and maintenance fees, it also dictated that the tenants were to pay reasonable charges for intentional and negligent damages to the leased premises. Accordingly, the maintenance fees refunded could be reduced, or setoff, by rentals due and reasonable charges for repairs if the same qualified as compulsory counterclaims thereby vesting the court with subject matter jurisdiction over that portion of the settlement agreement.

Fed.Rules Civ.Proc. rule 13(a), 28 U.S.C.A., provides in part:

> A pleading shall state as a counterclaim any claims which at the time of serving the pleading the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* . . . . (Emphasis supplied.)

Jurisdiction vests, therefore, in federal district courts governing counterclaims arising out of the *transaction or occurrence* that gives rise to the initial claim. In *Pipeliners Local Union No. 798, Tulsa, Oklahoma v. Ellerd,* 503 F.2d 1193 (10th Cir. 1974), we noted:

> A federal district court may assert jurisdiction of a claim which is a continuation of, or incidental and ancillary to, a principal claim over which it has jurisdiction, even though it might not have jurisdiction of the ancillary proceedings if it were an independent and original action or proceeding. *Aetna Insurance Company v. Chicago, Rock Island and Pacific Railroad Company,* 229 F.2d 584 (10th Cir. 1956); Wright, Federal Practice and Procedure; § 1414 at 69–71. This is so because the ancillary claim is referable to or dependent upon the jurisdiction of the court over the principal suit or proceeding. *United States v. Acord,* 209 F.2d 709 (10th Cir. 1954). In *Inter-State National Bank of Kansas City v. Luther,* 221 F.2d 382 (10th Cir. 1955), cert. dismissed 350 U.S. 944, 76 S.Ct. 297, 100 L.Ed. 823 (1956), we held that:

> > Counterclaim under Rule 13, F.R.C.P., includes both setoff and recoupment, and is broader than either in that it includes other claims and may be used as a basis for affirmative relief. See Clark Code Pleading, 2d Ed. 637, cited 3 Moore's Federal Practice, § 13.02, p. 9. Rule 13(a), F.R.C.P., provides for compulsory counterclaim "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim * * *." Rule 13(b) provides for a permissive counterclaim . . . the only difference . . . we need to note is that the compulsory counterclaim, being ancillary to the claim, derives its jurisdiction from the same source, whereas a permissive counterclaim not arising out of the same transaction or occurrence must rest upon independent grounds of jurisdiction . . . being of the view that the Bank *impliedly consented* to the jurisdiction of the court, the counterclaim was maintainable under Rule 13(b), F.R.C.P., whether compulsory or permissive. See 3 Moore's Fed-

eral Practice §§ 13.18–13.19. (Emphasis supplied.) 221 F.2d 390.

The courts have given the terms "transaction" and "occurrence" contained in Rule 13(a), *supra,* flexible and realistic constructions in order to effect "judicial economy", i. e., trial in one action of all related controversies between the parties and, of course, the avoidance of multiciplicity of suits. . . .
503 F.2d, at 1198.

In view of the singular relationship generated by the lease agreement between the rental fees, maintenance fees, and setoffs for repairs occasioned by damages to the leased premises, the trial court did not err in assuming subject matter jurisdiction of that portion of the settlement agreement providing for the allowance of setoff claims by the Defendants. Even assuming, *arguendo,* that such jurisdiction was not present, we would be disinclined to remove the setoff provisions from the settlement, when, as here, all of the affected parties, except Appellants who are still pursuing their own action, agree that the setoff provision should be included in the settlement.

## IV.

We have carefully considered Appellants remaining allegations of error. We hold that they are individually and collectively without merit.

WE AFFIRM.