**George HARDY, et al., Plaintiffs,**

v.

**NATIONAL KINNEY OF CALIFORNIA, INC., etc., Defendant. (Two cases)**

**Nos. C 80–3867 SAW, C 81–4430 SAW.**

United States District Court,
N.D. California.

July 5, 1983.

Philip Miller, Carroll, Burdick & McDonough, San Francisco, Cal., for plaintiffs.

Robert M. Sprague, Schachter, Kristoff, Ross, Sprague & Curiale, San Francisco, Cal., Stroock, Stroock & Lavan, Los Angeles, Cal., for defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO DISMISS

WEIGEL, District Judge.

Plaintiffs are trustees of the Building Service Employees Pension Trust ("Pension Trust") and the Building Service Health and Welfare Trust Fund ("Health and Welfare Fund"). Plaintiffs commenced C 80–3867 SAW on October 9, 1980, and C 81–4430 WAI on November 20, 1981. On December 22, 1981, the Court related the two actions, pursuant to L.R. 205–2.

Both of the instant actions seek the collection of allegedly delinquent contributions supposedly due under collective bargaining agreements from defendant Realty Maintenance, Inc. ("Realty Maintenance") to the Pension Trust and Health and Welfare Fund. C 80–3867 involves monies allegedly due from 1973 through 1977, and C 81–4430 amounts allegedly due for 1978 and 1979. Plaintiffs assert that jurisdiction in both cases is founded upon Section 2(b) of the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001, *et seq.*

The parties agree that the Pension Trust and the Health and Welfare Fund are multiemployer "plans" and Realty Maintenance is an "employer" under ERISA. *See* 29 U.S.C. § 1002.

On March 14, 1983, Realty Maintenance filed its answers and counterclaims to the complaint. The counterclaims essentially seek to offset amounts allegedly overpaid by defendants to the Pension Trust and the Health and Welfare Fund against any recovery plaintiffs might obtain in these actions. The counterclaim in C 80–3867 relates to contributions made in 1973 through 1977; the counterclaim in C 81–4430 involves payments made in 1978 and 1979.

Plaintiffs now move to dismiss these counterclaims on three grounds: first, due to the absence of "a short and plain statement of the grounds upon which the court's jurisdiction depends, and required by Fed.R. Civ.P. 8(a)(1); second, for lack of subject matter jurisdiction; and third, for failure to state a claim upon which relief can be granted.

### Dismissal under Rule 8(a)(1)

■ Since the counterclaims do not contain any reference to the basis of the Court's jurisdiction, Realty Maintenance has not complied with Fed.R.Civ.P. 8(a)(1). However, this failure to comply does not necessitate dismissal, provided the complaint reveals a proper basis for jurisdiction. *Williams v. United States,* 405 F.2d 951, 954 (9th Cir.1969); *Wong v. Bacon,* 445 F.Supp. 1177, 1182 (N.D.Cal.1977). Indeed, the Court must scrutinize the entire complaint before deciding on the existence of jurisdiction. *See* 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1206 (1969). As will be pointed out below, the Court has found a proper basis of jurisdiction in the allegations of the counterclaims. Consequently, plaintiffs' motion to dismiss for failure to comply with Rule 8(a)(1) is denied.

### Dismissal for Lack of Subject Matter Jurisdiction

■ In opposition to plaintiffs' argument that the Court has no subject matter juris-diction over its counterclaims, Realty Maintenance asserts that its counterclaims are "compulsory" within the meaning of Fed.R. Civ.P. 13(a) and thus do not require a basis of jurisdiction outside that alleged in the Complaint. This assertion is meritorious. As Rule 13(a) requires, the counterclaims at issue here arise out of the same "transactions and occurrences" that are the subject matter of plaintiffs' claims, payments made to the Pension Trust and the Health and Welfare Fund for the years 1973 through 1979. Plaintiffs allege delinquent contributions, and Realty Maintenance overpayments, for each of those years. Therefore the counterclaims are compulsory and do not require an independent basis of jurisdiction. *See Whigham v. Beneficial Finance Co. of Fayetteville, Inc.,* 599 F.2d 1322 (4th Cir.1979); *Shump v. Balka,* 574 F.2d 1341 (10th Cir.1978).

■ Plaintiffs contend that Realty Maintenance is, in effect, estopped from relying on the allegations of the complaint as the foundation of jurisdiction over its counterclaims, because Realty Maintenance, in its answer, has denied the existence of a jurisdictional basis for the complaint. Plaintiffs' contention is untenable. It would preclude Realty Maintenance from raising every possible defense, and, should any of those defenses fail, from pleading in the alternative. The Court declines to narrow or impede Realty Maintenance's right to litigate freely and fully. Plaintiffs' motion to dismiss for lack of subject matter jurisdiction is, therefore, denied.

### Dismissal for Failure to State a Claim upon which Relief can be Granted

Plaintiffs claim that Realty Maintenance has failed to state a viable claim for relief, because 29 U.S.C. § 1103(c)(1) allegedly bars all the counterclaims. This provision, which became effective on January 1, 1975, states, in pertinent part, that "... the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their

beneficiaries and defraying reasonable expenses of administering the plan."

Realty Maintenance's counterclaims seek the offset of alleged overpayments to the Pension Trust and the Health and Welfare Fund against whatever sums plaintiffs recover on their complaints. Monies already paid to the Pension Trust and the Health and Welfare Fund are indisputably "assets" of these plans. There is no doubt that Realty Maintenance seeks to apply certain of these assets against its potential liabilities to plaintiffs to its benefit, in contravention of § 1103(c)(1). Thus, at first blush, it appears that the counterclaims are precluded by § 1103(c)(1).

■ However, Realty Maintenance asserts that its claims are saved by an exception to § 1103(c)(1) contained in 29 U.S.C. § 1103(c)(2)(A)(ii). Under the latter section, an employer making a contribution to a multiemployer plan under a mistake of fact or law shall not be prohibited from obtaining "the return of such contribution or payment ... within 6 months after the plan administrator determines that the contribution was made by such a mistake." This exception is inapplicable to Realty Maintenance, because the plan administrators of the Pension Trust and the Health and Welfare Fund have made no finding of mistake. Realty Maintenance, nevertheless, contends that § 1103(c)(2)(A)(ii) implies that an employer is entitled to a refund of a mistaken contribution, if the employer claims a refund within six months after discovery of the mistake. *See E.M. Trucks, Inc. v. Central States, Southeast and Southwest Areas Pension Plan,* 517 F.Supp. 1122, 1124 (D.Minn.1981). Even assuming that such an implication is tenable, § 1103(c)(2)(A)(ii) cannot apply, since Real-

ty Maintenance has not demonstrated when it discovered the mistaken contributions and when it made its initial claim for refund.[1]

■ Contrary to plaintiffs' contention, § 1103(c)(1) does not bar all the counterclaims. It is settled that acts or omissions occurring prior to the effective date of ERISA provisions are not controlled by those provisions. *Reuther v. Trustees of Trucking Employees of Passaic and Bergen County Welfare Fund,* 575 F.2d 1074, 1078 (3rd Cir.1978); *Bacon v. Wong,* 445 F.Supp. 1189, 1192 (N.D.Cal.1978). Realty Maintenance alleges in its counterclaim in C 80–3867 that it is entitled to an offset arising from alleged overpayments in 1973 and 1974, before the effective date of § 1103(c)(1). Consequently, that portion of the counterclaim in C 80–3867 is not barred by § 1103(c)(1) and alleges a valid claim under state law.[2]

However, the remainder of the counterclaim in C 80–3867 and the entirety of the counterclaim in C 81–4430, all of which deal with post-January 1, 1975 contributions, are barred by § 1103(c)(1).

Accordingly,

IT IS HEREBY ORDERED that plaintiffs' motion to dismiss for failure to comply with Rule 8(a)(1) is denied.

IT IS FURTHER HEREBY ORDERED that plaintiffs' motion to dismiss for lack of subject matter jurisdiction is denied.

IT IS FURTHER HEREBY ORDERED that all counterclaims in C 81–4430 are dismissed.

IT IS FURTHER HEREBY ORDERED that those counterclaims in C 80–3867 relating to contributions and/or payments to the

---

1. Realty Maintenance further asserts that, in any event, *Fentron Industries, Inc. v. National Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982) accords it a right of action under § 1103(c)(2)(A)(ii). The assertion is groundless. *Fentron* was decided on facts different from those in the instant case. Moreover, *Fentron* did not hold that an employer may sue for refunds pursuant to § 1103(c)(2)(A)(ii), when the plan administrator has made no determination of mistake and where it is unclear when an

employer discovered his mistake and made his first claim for refund. *Fentron,* in short, is of no help to Realty Maintenance in the premises.

2. Plaintiffs erroneously maintain that the Court lacks jurisdiction to consider the state law counterclaims. Since all the counterclaims are compulsory, there can be no question as to the Court's jurisdiction over them. *See Shump v. Balka,* 574 F.2d 1341 (10th Cir.1978).

Pension Trust and/or Health and Welfare Fund on or after January 1, 1975 are dismissed.

IT IS FURTHER HEREBY ORDERED that the motion to dismiss those counterclaims in C 80–3867 relating to contributions and/or payments made to the Pension Trust and/or Health and Welfare Fund before January 1, 1975 is denied.